GRIEVANCE COMMITTEE OF THE HARTFORD COUNTY BAR *vs.* EDWARD W. BRODER.

First Judicial District, Hartford, October Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 7th—decided October 11th, 1930.

*Josiah H. Peck,* with whom were *Francis W. Cole* and *William D. Shew,* for the respondent.

*Hugh M. Alcorn,* State's Attorney, with whom was *Donald Gaffney,* for the complainant.

WHEELER, C. J. Motion to erase from the docket is based upon the grounds that the grievance committee which is taking this appeal is not in any proper sense a party plaintiff and has not been and cannot be aggrieved by the judgment appealed from and has no right of appeal from the judgment of the Superior Court.

The practice pursued prior to the institution of a grievance committee in cases of alleged misconduct of an attorney was by complaint by a committee of the bar to the Superior Court. *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 22 Atl. 441.

On September 1st, 1890, the judges of the Superior Court adopted a rule providing for the appointment in each county of a grievance committee "to inquire after, investigate and present offenses not occurring in the actual presence of the court, involving the character, integrity and professional standing of members of the bar of such county." It authorized the presentment of such offenses by the written complaint of this committee, or by the State's Attorney, or by a member of the bar by direction of the court and prescribed a procedure thereon. The rule provided: "Unless otherwise ordered by the court such complaints shall be prosecuted by the State's Attorney, and upon such hearing the court shall make such lawful order as may to it seem just." 58 Conn. 592.

The Public Acts of 1907, Chapter 120, now General Statutes, §§ 5347-5349, provides for the appointment of a grievance committee in the terms of this rule of court, extends its powers over witnesses and over the production before it of books and documents, and authorizes it to employ a stenographer and cause transscripts of the testimony of witnesses to be made and provides for the payment of its expenses and the reasonable charges of persons employed by it.

This rule of the Superior Court, now § 10, remains without substantial change with the addition in 1899 of § 11 of the rules, that "complaints preferred under Sec. 10 shall be proceeded with as civil actions, and costs may be taxed against the defendant in favor of the State," and the reasonable disbursements of the State's Attorney or such member of the bar allowed and taxed as part of the expenses of the court. Practice Book, p. 242.

The importance to the public and professional interests of this procedure is evidenced by the action of the judges and of the General Assembly. Manifestly its primary purpose is not the punishment of the attorney but the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing. Proceedings of this nature have as a rule been brought since 1890 in the name of the grievance commitee. While complaints of the grievance committee shall be proceeded with after the manner of civil actions, they are not in reality civil actions. The grievance committee is in no sense a party to the proceeding but an independent public body charged with the performance of a public duty in a wholly disinterested and impartial manner, neither is any person in whose name the complaint is brought a party. "The complaint made, the court controls the situation

and procedure, in its discretion, as the interests of justice may seem to it to require." *In re Peck,* 88 Conn. 447, 452, 91 Atl. 274. The proceeding is undertaken " 'for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them.' " *In re Peck, supra.*

The court selects for the grievance committee attorneys of approved position at the bar; their fairness and impartiality is even more essential than their professional competency.

The court imposes upon the State's Attorney the duty of prosecuting the complaint. This duty is an onerous and a trying one. The court entrusts it to the State's Attorney because he is its appointee in the highest office within its appointment. The State's Attorney is bound to present the complaint to the court with the utmost fairness and to the best of his ability. Whatever justice, in his best judgment, requires, that he must do. His obligation to the court and to his oath of office places upon him this public duty, which he must perform.

The trial court upon such a complaint is not engaged in the trial of an ordinary action but is investigating the conduct of an officer of the court to the end that the courts and the public may be protected from his misconduct or unfitness. "Into its determination there naturally and necessarily enters a large measure of judicial discretion." It "is not an absolute, but a reasonable" discretion which the court exercises. No appeal from the decision of the trial court is provided by our statute. Two of our earlier cases query whether the right of appeal exists. But a few years later we reached the conclusion that the disbarred attorney was entitled to have his disbarment proceeding reviewed upon appeal and that right has been affirmed in later cases. *O'Brien's Petition,* 79 Conn.

46, 63 Atl. 777; *In re Durant,* 80 Conn. 140, 149, 67 Atl. 497; *Grievance Committee* v. *Ennis,* 84 Conn. 594, 80 Atl. 767. We do not accord to the accused attorney this privilege because he is a party to the proceeding, but because he is entitled to have determined by our court of last resort whether or not he had been deprived of a "valuable right." Unless the appeal from the decision of the trial court were allowed it would never be finally known whether the discretion of the court had been reasonably exercised, or whether the proceedings had been regular and fair. "This conclusion"—the granting of the appeal—the court, by CHIEF JUSTICE PRENTICE, say in the case of *In re Durant, supra,* at page 149, "appears to us to be the only sound and safe one. The fact that the court exercises a large measure of discretion and is in a position to most intelligently exercise it, furnishes no obstacle to a review to ascertain not only whether a reasonable discretion was used, but also whether the proceedings were regular and fair. We not infrequently inquire to see whether there has been an abuse of judicial discretion." We have not heretofore had occasion to pass upon the question of whether an appeal would lie from the dismissal of the complaint at the instance of the body or person authorized by rule of court to make the complaint presenting the misconduct of an attorney. The rights of the individual attorney cannot be held to be of higher consideration than "that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." *In re Durant, supra,* at page 147.

If the disbarred attorney should have the opportunity to have reviewed by the highest tribunal of the State an alleged unreasonable exercise of discretion by

the trial court, or some irregularity or unfairness in the conduct of the proceedings, equally should it be the right of the court and the public and the due of the proper administration of justice that an exercise of discretion, claimed to be unreasonable to the court and the public and the administration of justice, should be reviewed. The granting of an appeal to the disbarred attorney and the denial of a like appeal to the representative of the public interest would be an unheard of procedure in this jurisdiction. The Supreme Court of Errors is the court of last resort for the correction of errors of law and it is only by an appeal to it that such errors may be finally determined.

The judges of the Superior Court and the legislature have instituted the procedure for investigating, ascertaining and adjudicating instances of misconduct of attorneys that justice may be done. To deny an appeal to the representative of the public interests involved would leave the decision to the uncontrolled discretion of a single judge and prevent a review of the procedure followed by him no matter how irregular, unfair or arbitrary to the public interest concerned. A procedure which would deny to the court and the public the right to have their interests safeguarded by the same rules of law which protect private and individual rights would be neither wise nor safe. It would be incongruous for the judges of the Superior Court and the legislature to provide the special procedure for the investigation and prosecution of such complaints with intent to protect the court, the profession of the law and the public and then deny the right of appeal from the decision of the trial court when the public official authorized by the judges of the Superior Court to prosecute the complaint was of the opinion that the decision of the trial court did not accord with the law. Neither legislature nor judges can be charged with the

institution of such a halfway measure of justice. When they approved of a procedure calling for the investigation and prosecution of such complaints they intended that these should be carried through under the forms and rulings of our law to an ultimate determination. In no other way in these matters can justice be served.

The designation of the State's Attorney to prosecute the complaint carries with it the implication that he shall prosecute it to the end, so far as his best judgment dictates.

It is his duty never to press a complaint or take an appeal from a decision of a trial court unless on fair, full and impartial consideration he deems it his public duty, under the trust committed to him by the judges to prosecute the complaint, to take the appeal. Our records fail to reveal a single instance where a State's Attorney has ever violated this trust.

The motion to erase is denied.

In this opinion the other judges concurred.