### In re Application of George Koenig for Readmission to the Bar

King, C. J., Murphy, Shea, Alcorn and Comley, Js.

Argued June 5—decided July 14, 1964

*Joseph G. Shapiro,* for the appellant.

*Louis Feinmark,* with whom was *Irving Smirnoff,* for the appellee.

SHEA, J. In July, 1959, upon a presentment to the Superior Court by the grievance committee of the Fairfield County bar, the petitioner was suspended from the practice of law "until further order of the court but in no event is the suspension to be for less than one year."[1] On April 3, 1963, he filed with the Superior Court an application for reinstatement, which was referred to the standing committee on recommendations for admission to the bar. Practice Book § 25. The committee, after holding a hearing thereon, rendered a report to the court recommending that the application be denied. The court overruled the recommendation of the committee, granted the application and reinstated the petitioner to the bar. The committee has appealed from the judgment.

Prior to the presentation of the present application, the petitioner had applied for reinstatement on three separate occasions, viz., June 1, 1960, February 14, 1961, and October 19, 1961. Each of these applications was referred to the standing committee on recommendations for admission to the bar, which, after due notice, held a hearing and

---

[1] Actually, the court's order, for reasons hereinafter explained, was a disbarment rather than a suspension.

rendered to the court a report recommending denial
of the application. Practice Book § 25. On each
of the first three applications, the court accepted
the report of the committee and denied the appli-
cation. The committee has made the files in the
previous applications a part of its report in the
present proceeding.

The petitioner was admitted to the bar in July,
1947. He was suspended because he had taken
unconscionable advantage of an elderly client who
was mentally ill by charging a fee of about $2500
for minor and insignificant services. This charge
was exorbitant. At the time of the hearing on his
first application for reinstatement, in November,
1960, Koenig told the committee that he had turned
back $500 of the fee charged to his client by giving
her a check for that amount. No effort had been
made to repay any of the remaining fee. The peti-
tioner, before his suspension, had been a partner
in a law firm, and his name was printed in large
gold letters on the door and windows of the Bridge-
port office occupied by the firm. He was also listed
in the directory and classified section of the 1960-61
telephone book. He did nothing to cause the removal
of his name as an attorney from the office door or
windows until long after the date of his suspension.
He continued his listing in the telephone book after
that time and paid a regular monthly charge for
this listing. His name still remained on the windows
in an office in Greenwich where he had also con-
ducted a practice. At the first hearing, he told the
committee that he was not conscious of the presence
of his name on the office doors and windows,
although he had frequently been in and out of the
Bridgeport office.

Before his admission to the bar, the petitioner

had been convicted of assault and breach of the peace. During his trial on those charges, the presiding judge expressed a belief that the petitioner's defense was predicated on a lie. While he was a student at law school, he attempted to bribe an attorney who had brought suit on behalf of a client against the petitioner's father. In the trial of that action, evidence was offered to prove that the petitioner had obtained a general release from the plaintiff in that case by the use of threats of physical violence and a small consideration in cash and personal property. The petitioner's testimony at that trial was branded by the court as deliberate perjury.

In the latter part of February, 1961, the committee was notified by letter from the petitioner's attorney that the listing of the petitioner's name as an attorney had been ordered removed from the telephone directory. In the same letter the committee was notified that the petitioner had sent to his former client from whom he had exacted the exorbitant fee a check in the amount of $1800 as a further adjustment of his fee. The petitioner's name was removed from the office door and windows at some time after the hearing on his first application. A short time before the hearing on the second application, the committee was informed for the first time that the petitioner's check for $500 given to his former client in 1960 as a purported refund of part of his fee had never been paid. At the time he filed his second application for reinstatement in February, 1961, the petitioner knew that this $500 check had not been paid, that the bank had refused to honor it because of its age and that he had been requested to replace it with a new one. He did not honor this request until April 13, 1961, three days

after the hearing on his second application. Until this time, the committee had been led to believe that the $500 had long since been refunded to the client.

At the hearing on the third application, there was evidence to show that the petitioner had not been truthful with the committee in explaining his failure to remove his name from the office door and windows. The committee, in its report to the court on his third application, concluded that "his difficulties stem from either a deficiency in moral sensitivity or an inability to recognize ethical concepts until these are impressed upon him by repeated disciplinary action." To this third report, the petitioner filed a remonstrance, alleging, inter alia, that the committee had acted improperly, with prejudice, unreasonably and unfairly and that the proceedings before it were inconsiderate, humiliating and lacking any real sense of justice. The remonstrance was overruled by the court, and the application for reinstatement was denied.

At the hearing on the present application, the petitioner presented no evidence but pleaded that he was remorseful and repentant and that he had suffered severe emotional distress and great financial hardships. In its report to the court, the committee stated (1) that "the petitioner is unable to recognize when an ethical concept is involved, and to distinguish between what is ethically right and ethically wrong, and the reasons therefor," and (2) that "he is not a safe and fit person to engage in the practice of law." The committee again recommended that the petition be denied.

In the absence of a finding, we turn to the memorandum of decision of the trial court to ascertain the conclusions upon which it based its order. *Rockville* v. *Public Utilities Commission*, 146 Conn. 1,

6, 146 A.2d 916; *State ex rel. Haverback* v. *Thomson,* 134 Conn. 288, 291, 57 A.2d 259. In overruling the committee's recommendation, the court stated that the two reasons advanced by the committee for recommending the denial of the application were "without merit and substance as of this time." The court pointed out that the petitioner had been under suspension for four years and stated that the language of the order of suspension conclusively indicates that after one year the petitioner "was to be considered eligible for reinstatement to the bar" in the absence of subsequent conduct on his part demonstrating lack of moral fitness to resume the practice of law. In reinstating the petitioner, the court expressed the feeling that its action was "in keeping with the spirit of the language of limitation as to time in the judgment." We see nothing in the order of suspension to indicate that the petitioner was suspended from practice for any definite time. The order deprived him of all the privileges of an attorney until further order of the court. This, in effect, constituted disbarment. The remaining language of the order merely provided that the order remain in effect for not less than one year. Generally, an order suspending an attorney from practice fixes a definite time. See, for example, *Grievance Committee* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516. When that time expires, the suspended attorney automatically resumes the right to practice his profession.[2] Disbarment, on the other hand, expels one from the bar and deprives him indefinitely of

___

[2] Although § 25 of the 1963 rules of practice provides the procedure for reinstatement of those who have been suspended from the bar, it relates to reinstatement before the expiration of a fixed term of suspension. One who has been suspended certainly would have the right to seek reinstatement, just as one who has been dis-

the privilege to practice his profession. Disbarment ousts him from his office, while suspension operates to deprive him temporarily of the right to practice. *State ex rel. The Florida Bar* v. *Evans,* 109 So. 2d 881, 882 (Fla.); *State ex rel. Nebraska State Bar Assn.* v. *Butterfield,* 172 Neb. 645, 648, 111 N.W.2d 543. The trial court erred in placing the construction which it did on the language of the judgment.

An applicant for readmission to the bar must be possessed of such standards of honor and honesty and have such an appreciation of the distinctions between right and wrong in the conduct of men toward each other as will make him a fit and safe person to engage in the practice of law. *In re Kone,* 90 Conn. 440, 442, 97 A. 307. Good moral character is a necessary and proper qualification for admission to the bar. *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 17, 22 A. 441; *Grievance Committee* v. *Broder,* 112 Conn. 263, 277, 152 A. 292; note, 64 A.L.R.2d 301. In this state, the ultimate burden of proving good character rests upon the applicant. *In re Application of Warren,* 149 Conn. 266, 274, 178 A.2d 528. Where an applicant has been suspended or disbarred or has resigned from the bar, an application for his reinstatement or readmission must be referred to the standing committee on recommendations for admission to the bar. Practice Book § 25. This rule requires the committee to render a report with its recommendations to the court. The committee should ordinarily find only the ultimate facts. If the committee has reason to believe

---

barred would have the right to apply for readmission. The rule is designed to cover this situation. It would not affect one's right to automatic reinstatement after the expiration of a fixed term in an order of suspension.

that its conclusions from subordinate facts will be questioned, it may also state the subordinate facts. The ultimate facts are reviewable by the court to determine whether they are reasonable and proper in view of the subordinate facts found and the applicable principles of law. *Cohn* v. *Hartford,* 130 Conn. 699, 706, 37 A.2d 237; Maltbie, Conn. App. Proc. § 210. The procedure for filing and testing the report should conform to that outlined in §§ 354 to 361 of the Practice Book. No attack was made on the present report.

We turn now to a consideration of the committee's report. No evidence had been offered at the hearing before the committee on the last application. No evidence was offered in the trial court at the hearing on the report. It has been the established practice for the court to decline to hear evidence on questions entrusted to bar committees. *O'Brien's Petition,* 79 Conn. 46, 55, 63 A. 777; *In re Application of Warren,* supra, 273. This practice applies in cases such as the present one where the issue involves an exercise of the committee's discretion. *In re Application of Warren,* supra. When the committee files its report, the court will determine whether the committee acted fairly and reasonably or from prejudice and ill will in its consideration of the application. No claim is made, nor could one be properly made, that the petitioner was not accorded his full rights in the investigation of his application and at the hearing. In the Superior Court, he was, therefore, compelled to rely on the claim that the committee, upon the evidence before it, abused its discretion. Our review of the record not only fails to establish that contention but convinces us that, had the committee acted otherwise, it would have failed in its duty. *In re Kone,* supra.

The trial court could not reasonably or logically conclude that the reasons advanced by the committee to support its recommendation were without merit and substance. *In re Kone,* supra. The facts in the previous reports of the committee, incorporated by reference here, furnish ample support for its recommendation.

There is error, the judgment is set aside and the case is remanded with direction to deny the application.

In this opinion the other judges concurred.