JOHN B. PHARR, JR. *v.* THE STANDING COMMITTEE ON
RECOMMENDATIONS TO THE BAR, NEW HAVEN
COUNTY, ET AL.

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 142686

Memorandum filed August 27, 1975

*Boce W. Barlow, Jr.,* for the plaintiff.

*James R. Greenfield,* for the named defendant.

PER CURIAM.  The instant matter comes before
this three-judge panel of the Superior Court pur-
suant to § 25 of the Practice Book.

John B. Pharr, a resident of New York City, has
filed an application for readmission to the Connect-
icut bar.  The standing committee on recommenda-
tions of the New Haven County bar made investi-
gation and held a hearing pertaining thereto at

which the applicant was present with his attorney and testified at some length. The committee rendered its report to this court recommending that the application for readmission be denied. On July 29, 1975, this court held a hearing at which the applicant was present and represented by his attorney. The attorney for the standing committee also appeared at that hearing to represent the committee. The applicant's counsel made a lengthy argument to this court urging it to grant the application for readmission despite the negative report of the committee. The committee's counsel argued against the granting of the application.

To put this matter in proper focus, it is desirable to review the background of this application. Pharr was admitted to practice in New York in 1943, and thereafter, in 1947, took the Connecticut bar examination and was admitted to practice in Connecticut. In 1953, he was charged with twelve counts of perjury in connection with the bringing of divorce cases in this state, wherein it was falsely alleged in the complaints prepared, signed, and filed by him that the parties represented by him were residents of this state for the then required statutory period. At the trial proceedings held in connection therewith, he was represented by counsel and pleaded guilty. He received a sentence of three to sixteen years in state prison and was released therefrom on serving the minimum term with good time deducted. He was placed on parole for a period of one year and after his release returned to New York City. He worked at various jobs and in 1965, started his own title abstract business in New York.

On April 6, 1970, he was granted a full and unconditional pardon by the Connecticut board of pardons. An order was entered in this court on July 30, 1970, requiring the erasure of all police, court,

and other records pertaining to the 1953 perjury charges and conviction, pursuant to Public Acts 1969, No. 229.

In 1970, he made application for reinstatement to the New York state bar submitting numerous written affidavits in support of his application. He was not afforded an oral hearing in the Appellate Division of the New York Supreme Court to which the application was referred for decision thereon. The application was turned down.

It must be pointed out that although the applicant grew up in New Haven and attended schools there while his father was a minister serving a church in New Haven, his legal practice was at all times centered in New York City. The transcript of the hearing held by the standing committee shows that the applicant testified that he is prepared to move to Connecticut if his application for readmission is granted.

Counsel argued that the applicant had amply proven his complete rehabilitation since his release from prison and that he recognized the grievous wrong that he had committed and was completely remorseful. He went on to suggest, however, that the committee's report was unfair and motivated by ill will and prejudice.

This court must examine this application fairly and impartially with the objective of doing justice not only to the applicant but also to the bar and to the public at large.

In the light of the established body of law in this state concerning reinstatement or readmission of attorneys, the important judicial function vested in this court is to "determine whether the application should be granted." Practice Book § 25.

*In re Application of Dinan,* 157 Conn. 67, 71, makes clear the role to be played by this court: "When the standing committee submits its report and recommendation to the court, the court must determine whether the committee acted after a fair investigation and hearing and whether it exercised its discretion reasonably and without prejudice. . . . In addition, the court must determine whether the committee conducted its proceedings in a manner which conforms to the requirements of procedural due process."

Under our Connecticut law and procedure, "the ultimate burden of proving good character rests upon the applicant." *In re Application of Koenig,* 152 Conn. 125, 132. *Koenig,* supra, 133, makes clear that the duty of this court is to "determine whether the committee acted fairly and reasonably or from prejudice and ill will in its consideration of the application." It must act in the light of the report of the committee as filed and on the full transcript of the committee's hearing; and it must determine whether the petitioner was afforded his full rights by the committee in the investigation of his application and at the committee hearing. The issue directly presented is whether this court can reasonably or logically conclude that "the reasons advanced by the committee to support its recommendation were without merit and substance." Id., 134.

*In re Application of Warren,* 149 Conn. 266, 273, also emphasizes that the court must determine "whether the committee or the bar, in withholding its approval for admission, acted arbitrarily or unreasonably or in abuse of its discretion or without a fair investigation of the facts." *Warren,* supra, 273, also makes clear, however, that where "the decision called in question is within the discretion of

the committee, the court reviews the committee's decision on the record of its proceedings to determine whether it has abused its discretion. *The hearing is not one de novo.*" (Italics supplied.)

Our Connecticut practice over many years has vested in the bar and its committees "a wide discretion over such qualifications as character and professional competence." *In re Application of Dodd,* 132 Conn. 237, 244. *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 415, makes it patently clear that "[p]roceedings for the admission of attorneys are not actions or suits at law; they are in the nature of investigations by the courts or their representatives to determine whether particular candidates are qualified to become its officers." In *Rosenthal,* supra, 417, the further point is made that, "[w]hile the determination of the qualifications of attorneys to be admitted to practice in our courts pertain to the judicial department, the decisions which must be made in carrying out the procedure established by the rules of the judges to accomplish that end are not judicial in their nature and may properly be vested in the bar examining committee."

Reference may also be made to the early case of *O'Brien's Petition,* 79 Conn. 46, in which the court reviewed the procedure relative to the admission of attorneys to the practice of law in Connecticut, starting from the first legislation in 1708, dealing with the rules of court as to admissions to the bar.

As to the hearing held in this court, counsel for the applicant dwelt heavily on the fact that numerous written affidavits strongly recommending his readmission were filed by various persons, mostly officials and persons who have known the applicant in New York. The only persons to appear before the standing committee to support the appli-

cation who are residents of New Haven County were several lawyers who admitted that they had only met the applicant a few days before the hearing. Their testimony must be weighed in the light of that obvious drawback of personal knowledge. It must be noted, however, that the Reverend Julian Taylor and William A. Pitts, Jr., a local dentist, did appear and testified in support of the applicant's character, stating that they had known the applicant as a boy and young man growing up in New Haven. Two other persons, a New York attorney and a New York accountant who apparently had had business relations with the applicant in connection with his title abstract business, also appeared to testify in the applicant's behalf before the committee.

It is in the light of that thoroughly defined law and procedure that this court must make its decision.

To have been admitted to the bar more than a quarter of a century ago was a significant achievement for a black man. Having accomplished that, the applicant destroyed himself, however, a short time later by committing a heinous offense which violated the sacred trust of his office. That fatal breach of trust of his oath of office as an attorney does not, however, warrant the conclusion that he has destroyed himself forever. Twenty-two years have now elapsed since his original transgression and disbarment. For all those years the applicant has apparently led an exemplary life, and there is no evidence of fault in the time that undoubtedly has passed slowly for him. The committee denied his petition because it believed that the applicant was less than candid in several respects; because his claim that the pardon and erasure of his conviction "wiped out the act" evidenced a lack of appreciation of requisite moral values; and finally

because it was "unimpressed" by the Connecticut attorneys who appeared in his behalf or by the sworn affidavits of other reputable citizens who made statements in his behalf. None of that, however, would afford valid support for the committee's conclusion that he has failed to prove that he now is prepared to sustain the proper standards of honor and honesty which are required of a practitioner at the bar of this state; or that he has failed to prove that he appreciates the distinctions between right and wrong and is presently a fit and safe person to engage in the practice of law.

This opinion is not intended in any way to mean that our moral values differ from those of the committee. Our standards of conduct are the same; and we hold all members of the bar to the same stringent code of ethics as our brothers. We find no reasonable basis whatever in the full transcript of the hearing to warrant any inference that the committee acted with any ill will, animosity, or prejudice toward the applicant. In this case the committee could not, in our opinion, have fairly and reasonably reached its conclusion on the basis of the subordinate facts. A diligent and scrupulous examination of the entire record, the transcript, and the exhibits compels that view of the case. The expressed reasons for the committee's decision reflect an intuitive sense of justice rather than a logical one. The reasons advanced in the committee's report, in the light of the subordinate facts, do not have sufficient merit or substance to sustain its negative recommendations.

The applicant is ordered readmitted to the bar of this state.

MIGNONE, HADDEN and AARONSON, Js., participated in this decision.