[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This petition for admission to the state bar has been brought to the Court. For the reasons set forth below, the petition must be denied.
The petitioner, David A. Friedman ("Friedman"), received a Juris Doctor degree from the Quinnipiac College School of Law ("Quinnipiac") in 1998. In the Spring of 1995, while a student at Quinnipiac, he took a course in constitutional law. The course had a closed-book final examination. This case has arisen because the respondent, the Connecticut Bar Examining Committee ("BEC"), has determined that Friedman cheated on that examination.
On September 25, 1995, a Quinnipiac Law School Advocate charged Friedman "with violating sections 3(A), 3(C), and 3(D) of the Quinnipiac College Law Student Discipline Committee, Student Conduct Code in connection with Prof. Martin Marguilies's Spring 1995 Constitutional Law Exam." The provisions in question prohibit:
 A. Cheating on any examination or other law school assignment, as illustrated by, but not limited to:
1) The unauthorized giving or receiving of aid or assistance:
2) The unauthorized use of information;
3) The unauthorized submission of work which has already been submitted in satisfaction of other course work;
4) The giving or obtaining of any unfair advantage.
 C. Any act which reflects adversely upon fitness to practice law. Relationship to fitness shall be construed in accordance with the American Bar Association Rules of Professional Conduct, and relevant CT Page 5411 case law.
D. Any attempt to commit any act prohibited by this Code.
On September 16, 1996, the Quinnipiac Student Discipline Committee ("Committee"), following a hearing, concluded "that Mr. Friedman violated Section A.2) and Section D of The Student Conduct Code." The Committee ordered Friedman's grade to be reduced one fill grade point, reprimanded Friedman for misconduct, and ordered its decision entered into Friedman's law school record.
Friedman appealed the Committee's decision to the Dean of the Law School. On January 24, 1997, the Dean reversed the Committee's decision "on the grounds that the delay in notifying Mr. Friedman of the charges and the delay in bringing the charges to a hearing were excessive and may have prejudiced Mr. Friedman's defense against these charges." The Dean added that, "I am obligated, however, to file the materials with Mr. Friedman's records for transmittal to any bar admissions committee that might have appropriate jurisdiction."
Friedman, as mentioned, graduated from Quinnipiac in 1998. He subsequently applied for admission to the Connecticut bar and passed the Connecticut bar examination given in July 1998. His experience with the BEC was less successful.
On January 4, 1999, the BEC sent Friedman a "Notice of Hearing," informing him that it would hold a hearing on his application on January 7, 1999. The notice states that,
The following matters will be discussed:
 Q#16: Applicant was charged with cheating on a law school exam and found, by the Student Discipline Committee to have violated Student Conduct Code Section A.2) and Section D., which decision was subsequently reversed by Dean Cogan.
Applicant's candor and credibility during the application process.
The hearing was held by a panel of the BEC on January 7, 1999, and June 25, 1999. Friedman was represented by counsel. The panel heard sworn testimony from Friedman and one Lynn Fiore ("Fiore"), a former fellow student and, by the time of the hearing, a member of the Connecticut bar, who had observed Friedman at the time of the examination. The panel also reviewed an extensive file, including the record of the Quinnipiac disciplinary proceedings. CT Page 5412
On January 14, 2000, the panel filed a Memorandum of Decision. The Memorandum concludes both that Friedman cheated on the examination in question and that his sworn testimony before the panel had not been truthful. The panel decided "that David Alan Friedman lacks present good moral character, and he is not recommended for admission to the Bar of the State of Connecticut."
On February 18, 2000, Friedman filed the petition now before the Court. The petition was heard on November 6, 2000. The record of the BEC was submitted. No additional evidence was produced.
On November 16, 2000, the Court filed its first Memorandum of Decision. (No. 106.) Friedman v. Connecticut Bar Examining Committee, 6 Conn. Ops. 1358 (2000). That decision remanded the matter to the BEC for farther findings.
On May 9, 2001, the BEC filed a Revised Memorandum of Decision. That Revised Memorandum contains certain findings pertaining to its conclusion that Friedman cheated on the examination in question.
The matter was again argued to the court, with no additional introduction of evidence. On August 20, 2001, the Court filed its second Memorandum of Decision. (No. 112.) That second Memorandum remanded the matter to the BEC once again for additional findings with respect to the BEC's determination that Friedman's testimony before the panel had not been truthful.
On January 7, 2002, the BEC filed its Second Revised Memorandum of Decision. The Second Revised Memorandum contains additional findings. Following the submission of supplemental briefs, the matter was argued, again with no additional introduction of evidence, on April 22, 2002.
It is common ground that the function of the Superior Court in ruling on this petition is that set forth in Scott v. State Bar ExaminingCommittee, 220 Conn. 812. 601 A.2d 1021 (1992):
 The Superior Court . . . has only limited discretion to accept or reject the BEC's recommendation on admission. The hearing on the petition is not de novo. Rather, the Superior Court must review the BEC's decision on its record to determine whether it has conducted a fair and impartial investigation. . . . The issue before the court is whether the [BEC], in withholding its approval for admission, acted arbitrarily or unreasonably or in abuse of its discretion or without a fair investigation of the CT Page 5413 facts.
Id. at 817-18. (Internal quotation marks and citations omitted.) Scott
additionally explains that, "[I]n this state, the court merely reviews the record to ascertain whether the BEC's findings are supported by adequate facts. Although the BEC is not an administrative agency . . . the Superior Court's review of its conclusions is similar to the review afforded to an administrative agency decision." Id. at 821.
In its Revised and Second Revised Memoranda of Decision, the BEC made a number of findings. On the issue of cheating on the law school exam, the BEC found that:
 1. David Friedman cheated on the Constitutional Law examination by bringing unauthorized information into a closed book exam.
 2. The information consisted of a piece of paper with writing on it which Mr. Friedman brought with him into the exam and had on his desk during the course of the exam.
 3. Mr. Friedman attempted to gain an advantage by bringing unauthorized information into a closed book exam.
On the issue of Friedman's truthfulness before the panel, the BEC found that:
 1. The applicant was not truthful in his initial answer to the panel when he described his version of what happened on the day of the exam. He was given the opportunity to admit that he brought written material into the exam with him and had that material on his desk during the exam. In his testimony, however, Mr. Friedman omits any mention of the written material which, as we have found, he brought with him into the exam and had on his desk during the exam. Mr. Friedman was also untruthful when he concluded his initial answer with the statement, "and that's all I did." 1/7/99 Hearing Transcript page 18, lines 16-25; page 19, lines 1-13.
 2. Mr. Friedman was not truthful when he testified to the panel that the writing which other witnesses saw on his desk at the exam was "written when the exam CT Page 5414 already started." 1/7/99 Hearing Transcript page 37, lines 20-25; page 38, lines 1-10.
 3. Mr. Friedman was not candid before the panel when he allowed his attorney on his behalf to deny "absolutely" the accusation that he brought unauthorized material into the law school examination, when Mr. Friedman knew that that characterization was untrue. 1/7/99 Hearing Transcript page 14, lines 2-8. In addition, Mr. Friedman was not truthful when he testified at the Student Discipline Committee that he did not have any written material on his desk at the exam other than the outline he wrote after the exam started. Exhibit E 9/6/96 Quinnipiac Hearing Transcript page 21, lines 12-21; page 25, lines 24-25; page 26, lines 1-4; page 33, lines 10-22.
Here, as in Scott, "the transcript reveals support" for the BEC's findings. 220 Conn. at 824. The key issue, as the parties acknowledged at argument, is whether the record supports the BEC's finding that Friedman cheated on the exam. If it does, Friedman essentially concedes that the record supports the BEC's finding that Friedman was untruthful before the panel.
Testifying before the BEC, Fiore testified that the exam "was a closed-book exam." This meant that there were "no materials in front of you." (Record p. 145.) Prior to the exam, she overheard Friedman talking with a fellow law student, Peter Bilelis ("Bilelis"). Bilelis told Friedman either "Why are you so nervous, everyone does it and doesn't admit it" or "What are you so nervous about, everyone does it, no one admits it." (Id. 152.) Once the exam started, Fiore testified, "I observed a piece of paper that Mr. Friedman had been studying prior to the exam under the blue book while we were taking the exam." (Id. 153.) "[O]nce the blue books were distributed I saw the bottom portion of it underneath the blue book . . . in front of Mr. Friedman." This was both immediately upon the commencement of the exam and some period of time into the exam. (Id. 154.) "It was a white, lined piece of paper with writing on it." (Id. 155.)
It is improper for the Court to substitute its own assessment of the respective witnesses' credibility and candor for that of the BEC. Scottv. State Bar Examining Committee, supra, 220 Conn. at 825. The BEC's decision to believe Fiore and disbelieve Friedman was a credibility decision that the BEC was plainly entitled to make.
The only question for the Court is whether there is evidence in the CT Page 5415 record that supports the BEC's findings. Scott v. State Bar ExaminingCommittee, supra, 220 Conn. at 826. In this case, adequate record evidence plainly exists. Friedman's principal argument is that Fiore could not read the actual writing in front of Friedman and was thus unable to say with the requisite certainty that the writing in front of him during the exam was the same document he had studied during the exam. Fiore, however, was unambiguous in her testimony that she saw the paper in question both at the beginning of the exam and some period of time into the exam. (Record p. 154.) This testimony, combined with Fiore's testimony concerning Friedman's pre-exam conversation with Bilelis (id. 152.), was plainly enough to allow the BEG to conclude that Friedman had cheated by bringing unauthorized material into a closed-book exam. It is incumbent upon the Court to recognize that the findings of a panel like the BEC may be supported by circumstantial evidence. See Murphyv. Commissioner of Motor Vehicles, 254 Conn. 333, 347, 757 A.2d 561
(2000). As Thoreau famously observed, "Some circumstantial evidence is very strong, as when you find a trout in the milk." HENRY DAVID THOREAU, JOURNAL 11 Nov. 1850.
As mentioned, Friedman essentially concedes that if the record is sufficient to support the BEC's conclusion that he cheated on the exam, it is also sufficient to support the BEC's conclusion that Friedman was untruthful before the panel.
After a careful review of the record, giving full consideration to the arguments of counsel, the Court is unable to find that the BEC, in withholding its approval for admission, acted arbitrarily or unreasonably or in abuse of its discretion or without a fair investigation of the facts. It finds, to the contrary, that the BEC's findings are supported by adequate facts in the record.
The petition for admission to the state bar is denied.
Jon C. Blue Judge of the Superior Court