[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR REINSTATEMENT
The applicant, Harry S. Eberhart, seeks reinstatement to the Connecticut bar pursuant to an application filed on October 2, 2001. This is the second time he has filed such an application, despite the fact that he had resigned from the bar and waived the privilege of applying for reinstatement in 1991. He seeks the appointment of a three judge panel to consider his request, which the Standing Committee on Recommendations for Admission to the Bar of New Haven County opposes.[1]
Eberhart had been suspended from the practice of law for two years on April 19, 1991, following a Superior Court presentment that resulted in findings of violations of the Code of Professional Conduct. Later that same year, with other accusations of misconduct looming, Eberhart gave notice of his desire to resign from the Bar and waive his right ever to reapply for reinstatement. On July 26, 1991, following a hearing, the court, Fracasse, J., accepted Eberhart's resignation and waiver of his right to apply for reinstatement.[2] In light of that resignation and waiver, the additional accusations were not pursued.
On October 20, 1993, however, Eberhart filed the first of his two applications to be reinstated to the Connecticut bar. Eberhart contended that, despite his resignation and waiver, he was not precluded from applying for reinstatement because (1) Connecticut does not recognize permanent disbarment; (2) he was fit to practice law; (3) he had complied with the court's earlier restitution order; and (4) his resignation was not fairly negotiated. In a decision dated March 31, 1995, a three judge panel accepted the recommendation of the standing committee, found the applicant's waiver to be knowing and voluntary, and held that, having resigned from the bar and having knowingly and voluntarily waived his privilege to reapply, Eberhart was estopped to apply for readmission to the bar. The panel noted that Eberhart was incorrect in his effort to characterize the prior proceeding as a "permanent disbarment" when in CT Page 9530 fact what had occurred was a voluntary resignation with a waiver of the right to reapply. Under those circumstances, his claims of "present fitness to practice law" and compliance with the court's restitution order were irrelevant. Finally, the panel examined the transcript of the proceedings before Judge Fracasse and concluded that Eberhart had knowingly and voluntarily waived his right to reapply for reinstatement at the time of his resignation.
Eberhart is now once again seeking reinstatement to the Connecticut bar. In this application, Eberhart raises precisely the same arguments that were previously raised and decided in his October 20, 1993 application. The standing committee has again issued a report, dated February 15, 2002, recommending that Eberhart not be reinstated to the bar.[3]
On March 18, 2002, prior to requesting that the Chief Justice convene a three judge panel to consider the application pursuant to Practice Book § 2-53(a), the undersigned, in his capacity as Administrative Judge, ordered the parties to appear at a hearing so that they could address the issue of whether Eberhart is estopped to proceed further with this, his second application for reinstatement to the bar, based on the earlier finding that he had knowingly and voluntarily waived the privilege of applying for reinstatement at the time of his resignation from the bar. At that hearing, held on April 8, 2002, the undersigned suasponte raised the issue of preclusion under the doctrines of collateral estoppel and res judicata and directed the parties to submit briefs.[4]
Eberhart and the standing committee subsequently filed memoranda addressing these issues.
Eberhart first argues that collateral estoppel does not apply since the relevant issue has not yet been determined by the court. Eberhart contends that since the court did not determine his fitness to practice law, collateral estoppel can not be invoked to bar his application. Further, Eberhart argues that this is "a case where preclusion should not be invoked, as applying any of the preclusion doctrines would not advance the doctrine's underlying policy of protecting the interests of the parties, yet bringing litigation to a close while permitting a party to vindicate a just claim." Lastly, Eberhart submits that neither res judicata nor collateral estoppel can apply because there were no legal "parties" in the prior proceeding.
The standing committee argues that Eberhart is precluded from proceeding on his current application under both doctrines. It contends that by the time Eberhart's first application reached the three-judge panel, it had become a full-fledged judicial proceeding to which the concepts of judicial economy and finality of judgments apply. The CT Page 9531 committee argues that it would be inequitable and would frustrate the purposes of these doctrines to permit attorneys an unlimited right to bring application after application seeking reinstatement despite final findings that the right to seek reinstatement had been waived. It notes that this is especially true in light of the fact that the grievance committee had foregone the prosecution of other pending grievances in consideration of the fact that Eberhart had asked to be permitted to resign and waive his right to reapply. The committee further contends that collateral estoppel applies because both the current and prior applications involve identical parties and identical issues.
"The doctrines of res judicata and collateral estoppel are well established. The two doctrines protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation." (Internal quotation marks omitted.) Weiss v. StatewideGrievance Committee, 227 Conn. 802, 818, 633 A.2d 282 (1993). "Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. . . . In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Citation omitted.) Id. The doctrine of res judicata may be raised by the court suasponte, as has been done in this case. Tucker v. Pace InvestmentsAssociates, 32 Conn. App. 384, 391, 629 A.2d 470, cert. denied,228 Conn. 906, 634 A.2d 299 (1993), cert. denied, 510 U.S. 1196,114 S.Ct. 1305, 127 L.Ed.2d 657 (1994); Legassey v. Shulansky,28 Conn. App. 653, 654, 611 A.2d 930 (1992).
Eberhart's first two argnments are easily disposed of. First, his claim that what he characterizes as the "relevant issue" in this case, his "present fitness to practice law," has not yet been addressed, is fatally flawed. He is correct, of course, in asserting that this issue has not been addressed, but he is incorrect in claiming that it is relevant. Since he has been previously found to be bound by his waiver of the privilege of seeking reinstatement, there can be no purpose to his litigating his claimed fitness to practice law at present or at any other time. Further, his argument that preclusion should not be invoked because it would not advance the policy of "protecting the interests of the parties, yet bringing litigation to a close while permitting a party to vindicate a just claim," makes no sense at all in the context of a case where the same issues were litigated by the same participants and resulted in findings on those issues that have become a final judgment. CT Page 9532
Eberhart's more interesting contention is that preclusion should not apply because the doctrines of res judicata and collateral estoppel require identical "parties," and that grievance proceedings, being sui generis, do not have "parties." Indeed, our Supreme Court has stated that "[t]here are no adversary parties [to grievance proceedings] in the technical legal sense, although our reports contain cases which, in their titles, carry as parties not only the names of the petitioners [or respondents] but those of bar examining committees and grievance committees." (Internal quotation marks omitted.) Weiss v. StatewideGrievance Committee supra, 227 Conn. 819. In that case, which involved an effort to use the results of a civil case to preclude a claim being made in a grievance complaint, the court went on to observe that in a legal sense, neither the plaintiff nor the statewide grievance committee [is] a `party' to the grievance proceeding against whom the doctrines of res judicata or collateral estoppel can properly be applied." Id. The court held that even if the attorney and the grievance committee were viewed as "parties" to the grievance proceeding, the doctrines were inapplicable to that case because the "grievance committee was neither named as nor in privity with any party to the [underlying] civil action." Id.
It is important to note, however, that in Weiss, it was the respondent lawyer who sought to invoke the doctrines to preclude the Statewide Grievance Committee's claim of professional misconduct. The attorney had sued a former client for $350,000 in fees, and the former client had filed counterclaims alleging violations of the Connecticut Unfair Trade Practices Act, negligence, intentional interference with contract, breach of fiduciary duty, abuse of process and fraud. The case was settled by way of a stipulated judgment for the attorney in the amount of $18,000. The attorney then sought to use that settlement in the grievance proceeding to preclude the allegations of misconduct based on his handling of the transaction that had been the subject of the civil case.
It is also worthy of mention that subsequent decisions of the highest courts of at least two of our sister states have reached the opposite conclusion, holding that issues litigated and decided in civil proceedings may preclude relitigation of the same issues in disciplinary proceedings, despite the fact that the parties to the civil case are not the same as those in the disciplinary proceedings. See, e.g., Bar Counselv. Board of Bar Overseers, et al. 420 Mass. 6, 647 N.E.2d 1182 (1995); InRe Bruzga's Case, 142 N.H. 743, 712 A.2d 1078 (1998). Neither of these courts expressed any concern whatsoever over whether the participants in disciplinary cases could be categorized as "parties" for purposes of the application of these doctrines; indeed, these courts seemed to assume that they were in fact parties. See also In the Matter of Bolden BruceKittrell, A Member of the State Bar, 2000 WL 1682426 (Cal.Bar Ct. 2000). CT Page 9533
Significantly, the court in Weiss implied that its observation about the "technical" party status of the participants in grievance matters was dictum, because it went on to state:
 . . . even were we to view the plaintiff and the statewide grievance committee as parties to the grievance proceeding, the doctrines of res judicata and collateral estoppel are nonetheless inapplicable. The parties in the civil action were the plaintiff herein, Weiss, and his former clients, the Zebroskis. The statewide grievance committee was neither named as nor in privity with any party to the civil action. As a result, the statewide grievance committee's interests were neither protected nor litigated in the civil action. We conclude, therefore, that the trial court properly determined that the doctrines of collateral estoppel and res judicata were inapplicable to the grievance proceeding. Id., 819.
Here, of course, both Eberhart's and the standing committee's interests were protected and litigated in the prior proceeding before the three judge panel. Moreover, the court in Weiss did not make clear why, if the plaintiff/applicant and the grievance committee were not parties in a "legal sense," it felt itself compelled to go on to state that because the grievance committee was not a party to the prior civil action, the doctrines did not apply to the grievance proceeding. Unless, in the court's mind, the issue was still open as to whether under some circumstances the doctrines could apply to certain types of grievance proceedings, there would have been no need for it to make its holding in Weiss that the doctrines were inapplicable because the grievance committee was neither named as nor in privity with the complainant in the civil matter.
Indeed, unlike any other case known to this court in which the status of "parties" in grievance cases has been considered, the instant matter involves the same applicant, the same grievance committee, the same courthouse and precisely the same issues as the application that was decided adversely to the applicant in 1995. It should also be noted that the Supreme Court has equivocated on the notion that there are no parties in grievance matters, holding that "an attorney [who is the subject of a disciplinary proceeding] may be characterized as a party aggrieved by the decision of the court . . . thereby qualifying him to pursue an appeal." (Citation omitted; emphasis added; internal quotation marks omitted.) Inre Application of Pagano, 207 Conn. 336, 340, 541 A.2d 104 (1988). "The end result of the [grievance] proceedings is in the nature of a judgment from which an appeal lies to [the] court." (Internal quotation marks CT Page 9534 omitted.) Id. If an attorney may thus be considered as a party for purposes of aggrievement and the right to appeal, why should an attorney not be considered a party for purposes of determining whether a prior determination against him on the precise issue that is the threshold question in his present action should be given preclusive effect with regard to his raising that issue in a new proceeding involving the same actors as were involved in the previous proceeding?
Similarly, the Supreme Court has held that the action of the court in admitting an applicant to the bar is a final judgment from which an appeal may be taken. In re Application of Dodd, 131 Conn. 702, 707,42 A.2d 36 (1945). "The record contains a judgment which expresses thefinal action and judgment of the court. It is as final as any judgment could be, under the circumstances." (Emphasis added.) Id. This court concludes, therefore, that the March 31, 1995 decision denying Eberhart's application was a final judgment from which an appeal might have been taken and that Eberhart must be viewed as one of the parties to that proceeding.
Even if Eberhart and the standing committee were not parties in some "technical legal sense," in both proceedings, Eberhart brought an application for reinstatement and the standing committee made a determination that Eberhart should be estopped to apply for readmission to the bar, due to his resignation and waiver. In both cases, they have looked and acted like parties, with appearances filed on their behalf and they have taken advantage of many of the procedures normally afforded to parties in litigation. In light of those facts, the fact that the Supreme Court's statement in Weiss about parties in the "technical legal sense" appears to have been dictum, and the fact that the highest courts of our sister states view the participants in disciplinary matters as "parties" to whom res judicata and collateral estoppel may apply, this court will, therefore, consider Eberhart and the standing committee to be parties for purposes of determining whether the doctrines of res judicata and collateral estoppel apply to the instant case.
This court finds that the March 31, 1995 decision was a final judgment rendered on the merits. In that decision, the three judge panel adopted the recommendation of the standing committee, held that Eberhart was estopped to seek reinstatement to the bar based on his resignation and waiver and, therefore, denied Eberhart's application. See In reApplication of Eberhart Superior Court, judicial district of New Haven, Docket No. CV 91 0312381 (March 31, 1995, Licari, Hodgson, Gordon, Js.). Since the March 31, 1995 decision was a final judgment rendered on the merits, it is an absolute bar to Eberhart's again seeking reinstatement in this or any other action. The doctrine of res judicata thus precludes Eberhart's application for reinstatement to the bar. CT Page 9535
Moreover, Eberhart asserts precisely the same arguments, almost word for word, that were previously raised and refuted with respect to his past application. In both applications, Eberhart argued that Connecticut does not recognize permanent disbarment, that he is fit to practice law, that he has complied with the restitution order and that his resignation was not fairly negotiated. These issues were previously determined in the prior proceeding: his was a resignation, not a "permanent disbarment;" his "present fitness to practice law" is not relevant in light of his resignation and waiver; his having made restitution is also not relevant in light of his waiver; and his waiver was previously found to be knowing and voluntary. The doctrine of collateral estoppel, therefore, also precludes Eberhart's application for reinstatement.
The underlying policies of both of these two doctrines would be frustrated were they not applied to this situation. As previously noted, "[t]he two doctrines protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation." (Internal quotation marks omitted.) Weiss v. Statewide GrievanceCommittee, supra, 227 Conn. 818. If the court could not apply these doctrines, there is nothing but the cost of the filing fee to deter Eberhart or any similarly situated resigned lawyer from bringing application after application seeking reinstatement to the bar, despite a knowing, understanding and voluntary resignation and waiver of the privilege of seeking reinstatement to the bar. The application of res judicata and collateral estoppel to this case protects the finality of prior judicial determinations on precisely the same claims and issues, conserves the time of the court and prevents wasteful relitigation of the exact same issues.[5]
Put another away, any three judge panel that might be convened to hear this application would be confronted with the 1995 panel's determinations of precisely the same issues. There are no new issues raised by the application, which appears to have been undertaken as a substitute for an appeal that was never pursued following the 1995 decision. A new panel would have no basis for setting aside the 1995 panel's findings and would therefore be compelled to enter judgment dismissing the application. The situation is therefore such that there are no factual issues in dispute, and the standing committee is entitled, as a matter of law, to a judgment dismissing the application. See also In re Application of Kliger, Superior Court, judicial district of New Haven (September 26, 1997,Licari, Fracasse, Pittman, Js.) (20 Conn.L.Rptr. 435, 437) (holding that a waiver of the right to reapply was valid and, therefore, the applicant was estopped to apply for readmission).
For the foregoing reasons, Eberhart is precluded from applying for CT Page 9536 reinstatement to the Connecticut bar, and judgment will enter dismissing his application.
Jonathan E. Silbert, Judge