D'AURIA, J.
**691 *1181 After the defendant, Thomas J. Hickey, voluntarily resigned from the bar of this state, he filed an application for reinstatement, and the plaintiffs, Disciplinary Counsel, and the Statewide Grievance Committee (committee), filed motions to dismiss the defendant's application for reinstatement.[1] The issue that we must resolve in this appeal is whether the trial court properly granted the plaintiffs' motions to dismiss the defendant's application for reinstatement to the bar on the ground that the defendant had resigned from the bar and waived his right to apply for reinstatement. The defendant contends that the trial court incorrectly determined that the portion of Practice Book § 2-53 (b) providing that "[n]o attorney who has resigned from the bar and waived the privilege of applying for readmission or reinstatement to the bar at any future time shall be eligible to apply for readmission or reinstatement to the bar," which became effective January 1, 2014, applied retroactively to his application for reinstatement filed in 2012. The defendant also claims that, under **692 Practice Book (2012) § 2-53 (a), which, according to him, is the rule of practice that the trial court should have applied to his application, the court had no authority to entertain the plaintiffs' motions to dismiss on the ground that he was ineligible to apply for reinstatement but, rather, was required to forward his application to a standing committee on recommendations for admission to the bar (standing committee) for a determination of that issue.
We conclude that the trial court correctly determined that the defendant was ineligible to apply for reinstatement to the bar as the result of his voluntary resignation and waiver of his right to apply for reinstatement, regardless of whether Practice Book § 2-53 (b) is retroactive. We further conclude that the trial court was not required to forward the defendant's application to a standing committee and properly granted the plaintiffs' motions to dismiss. We therefore affirm the judgment of the trial court.
The record reveals the following facts, which were either found by the trial court or are undisputed, and procedural history. After receiving a notice of overdraft relating to the defendant's IOLTA account,[2] in May, 2008, the committee initiated an investigation that ultimately led to an effort *1182 by the committee to audit that account. In connection with the audit, the committee directed the defendant to produce certain documentation pursuant to Practice Book § 2-27 (c). Also during this time, the defendant's IOLTA account was selected for a random audit. In response, the defendant initiated a proceeding in the trial court pursuant to **693 Practice Book (2008) § 2-52, seeking permission to resign from the bar and to waive his right to apply for reinstatement. The defendant subsequently filed in the trial court a memorandum of law contending that the compelled production of the documentation sought by the committee would violate his right against self-incrimination guaranteed by the state and federal constitutions. Because of the defendant's refusal to cooperate, the committee forwarded the defendant's overdraft grievance and random audit files to Disciplinary Counsel for presentment to the trial court. The plaintiffs initially objected to the defendant's resignation from the bar but, ultimately, withdrew their objections after the defendant agreed to provide certain documentation to the committee and Disciplinary Counsel.
On November 12, 2008, the trial court, Adams , J. , conducted a hearing on the resignation proceeding. At the hearing, the committee submitted a report pursuant to Practice Book (2008) § 2-52 (b) in which it represented that, as the result of the defendant's resignation from the bar and waiver of his right to seek reinstatement, it would resolve all disciplinary matters involving the defendant. The court canvassed the defendant as to whether his resignation and waiver of his right to seek reinstatement were knowing and voluntary, and whether he had been advised by counsel of the ramifications of his actions. The defendant responded affirmatively to both inquiries. The court then accepted the defendant's resignation and waiver.
In 2012, notwithstanding his voluntary resignation and prior waiver of his right to seek reinstatement to the bar, the defendant filed an application for reinstatement, contending that the "waiver does not preclude a present determination of his present fitness to be admitted to practice law." Disciplinary Counsel filed a motion to dismiss the application, claiming that the court lacked jurisdiction to entertain it as the result of **694 the defendant's waiver of his right to seek reinstatement. In response, the defendant contended that his waiver was not knowing or voluntary because he had never been advised of his right to appeal from the judgment of the trial court accepting his resignation.
For reasons that are unclear from the record, no action was taken on Disciplinary Counsel's motion to dismiss for nearly four years. In January, 2016, the defendant filed a supplemental memorandum of law in opposition to the motion. He claimed that, during the years preceding his resignation, his wife had been struggling with a difficult and embarrassing family situation and that she was " 'overwhelmed ... with fear' " that the situation would become public if the committee's investigation against the defendant continued. Affidavits by the defendant and his wife setting forth the details of the family situation were attached to the defendant's opposition to the motion to dismiss. The defendant also contended that "[f]our independent audits were conducted and [his] client trustee accounts were completely in compliance with the law ...."
Thereafter, the committee also filed a motion to dismiss the defendant's application for reinstatement. In its memorandum of law in support of its motion to dismiss, the committee contended that its limited investigation of the defendant in 2008 had showed that there was "a serious question that remains to this day as to whether the *1183 [defendant] misappropriated funds from his IOLTA account." The committee also contended that the grievance complaint file, which stemmed from the IOLTA account overdraft, and the random audit file had been closed in exchange for the defendant's resignation and waiver, and that those files had since been destroyed.
After conducting a hearing on the plaintiffs' motions to dismiss, the trial court, Povodator , J. , granted them **695 both.[3] In its memorandum of decision, the court observed that, before reaching the merits of the defendant's claim that he was presently fit to serve as an attorney, the court was required to address the threshold question of whether the defendant's waiver precluded consideration of his application for reinstatement. The court concluded that, although there are no formal rules governing motion practice in reinstatement proceedings, the court had the inherent authority to entertain a motion to dismiss that raised this threshold question. The court also concluded that the portion of Practice Book § 2-53 (b) providing that an attorney who has resigned from the bar and waived the right to seek reinstatement is ineligible to apply for reinstatement, which was added to the rule and became effective in 2014,[4] was retroactive because it "restated existing procedures and practices, rather than creating a new prohibition." Addressing the defendant's claim that his waiver was invalid because it was not knowing and voluntary, the court stated that, "accepting the factual contentions set forth in the affidavits ... relating to the concern about disclosure of family skeletons, the court cannot conclude that is a cognizable basis for finding a lack of knowing and voluntary waiver." The court further stated that, "[w]hile the [defendant's] rationale may well be plausible and emotionally attractive, [his] own characterization of his decision as 'ill-considered' is not the equivalent of a negation of a knowing and voluntary decision. Nor, to the extent the term is invoked, do these facts constitute duress, an alternat[iv]e characterization given by the [defendant]." The court concluded that no evidentiary hearing was necessary because the court assumed the truth of the facts averred in the affidavits that the defendant had **696 submitted in support of his application for reinstatement. Finally, the court concluded that the defendant's knowing and voluntary waiver of the right to seek reinstatement in exchange for the committee's assurance that there would be no further investigation of him precluded him from seeking reinstatement. Accordingly, the court granted the motions to dismiss.
Thereafter, the defendant filed a motion for articulation in which he requested that the trial court articulate, among other things, whether and on what ground it had determined that it lacked subject matter jurisdiction over his application for reinstatement. In its response, the court noted that the defendant had not previously raised the issue of whether the court's subject matter jurisdiction was implicated by the plaintiffs' claim that the defendant was ineligible to apply for reinstatement to the bar. The court then observed that "[t]he sui generis nature of the proceeding undercuts the need for clear demarcation of [whether the issue was] jurisdictional [or] nonjurisdictional in a technical sense. The issue was whether there had been a threshold legal or factual presentation that would warrant further proceedings ...." The court concluded that a motion to dismiss *1184 was the proper vehicle for raising this issue, regardless of whether it fell within one of the traditional categories of claims implicating subject matter jurisdiction.
This appeal followed.[5] The defendant claims that the trial court incorrectly determined that the current version of Practice Book § 2-53 (b), which provides in relevant part that "[n]o attorney who has resigned from the bar and waived the privilege of applying for readmission or reinstatement to the bar at any future time shall **697 be eligible to apply for readmission or reinstatement to the bar under this rule," applies retroactively to his application. He also contends that the trial court incorrectly determined that it had the inherent authority to entertain the plaintiffs' motions to dismiss his application for reinstatement because (1) Practice Book (2012) § 2-53 (a),[6] which the defendant claims governs, requires the trial court to forward all applications for reinstatement to a standing committee for consideration, and (2) a waiver of the right to apply for reinstatement does not implicate the trial court's subject matter jurisdiction over an application for reinstatement.[7] We affirm the judgment of the trial court.
I
We first address the defendant's claim that the portion of Practice Book § 2-53 (b) providing that an attorney who has previously waived the right to seek reinstatement to the bar is ineligible to apply for reinstatement is not retroactive because that provision was neither procedural nor intended to be clarifying. See, e.g., Narayan v. Narayan , 305 Conn. 394, 403, 46 A.3d 90 (2012) (procedural rules of practice ordinarily apply retroactively whereas statute that changes substantive rights is not subject to retroactive application); id. at 410, 46 A.3d 90 (new rule of practice is presumed to apply prospectively **698 in absence of evidence of clear intent that rule was intended to be clarification of prior rule); see also D'Eramo v. Smith , 273 Conn. 610, 621, 872 A.2d 408 (2005) ("[w]hile there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress" [internal quotation marks omitted] ). This is a question of law subject to plenary review. State v. Nowell , 262 Conn. 686, 701, 817 A.2d 76 (2003).
We conclude that we need not determine whether the provision added to Practice Book § 2-53 (b) in 2014 prohibiting attorneys from seeking reinstatement to the bar after waiving that right is substantive or procedural because, even if we were to assume that it is substantive, we agree with the trial court that the provision merely codified the preexisting common-law rule in this state that a knowing and *1185 voluntary waiver of the right to seek reinstatement after resigning is a permanent bar to reinstatement. See In re Application of Eberhart, 48 Conn.Supp. 267, 269, 277, 841 A.2d 749 (2002) (attorney applicant's second application for reinstatement to bar was precluded by res judicata because three judge panel that heard first application for readmission concluded that, "having resigned from the bar and having knowingly and voluntarily waived his privilege to reapply, [the attorney applicant] was estopped [from applying] for readmission to the bar"), aff'd, 267 Conn. 667, 841 A.2d 217 (2004) ; see also id. at 668, 841 A.2d 217 (adopting opinion of trial court as "a proper statement of the issues and the applicable law concerning those issues"); In re Application of Kliger , Superior Court, judicial district of New Haven (September 26, 1997) (20 Conn. L. Rptr. 435, 437 ) ("[a] knowing and intelligent waiver of the privilege of applying for readmission to the bar at any future time ... is binding and final once **699 accepted by the [c]ourt"); see also Florida Bar v. Mattingly , 342 So.2d 508, 510 (Fla. 1977) (attorney who enters into agreement to resign from bar and to never petition for reinstatement in exchange for dismissal of misconduct charges is permanently bound by agreement).
The reason for the rule is obvious: an attorney should not be able to waive permanently his right to apply for reinstatement to the bar to avoid disciplinary proceedings and then, after evidence pertaining to the disciplinary matter has been lost or destroyed, witnesses have disappeared and memories have faded, renege on that waiver. Indeed, although the defendant contends that the portion of Practice Book § 2-53 (b) providing that an attorney who previously has waived his or her right to apply for reinstatement to the bar is ineligible to apply for reinstatement is not retroactive because it is substantive, he does not contend on appeal that an attorney who has knowingly and voluntarily waived his right to apply for reinstatement to the bar should, nevertheless, be eligible to submit such an application.[8] Rather, he contends only that his waiver is not binding because it was not knowing or voluntary.[9] Accordingly, we need not decide whether the amendment to Practice Book (2012) § 2-53 was retroactive because, even if it was not, the trial court in the present case correctly held that an attorney's knowing and voluntary waiver of the right to seek reinstatement to the bar after resignation renders that attorney permanently ineligible to seek reinstatement under the common law. See Maxwell v. Freedom of Information Commission , 260 Conn. 143, 149-50, 794 A.2d 535 (2002) (concluding that it was unnecessary to decide whether statute codifying common-law attorney-client privilege was retroactive because same *1186 legal standard applied regardless of whether statute was retroactive).
II
We next address the defendant's claim that the trial court incorrectly determined that it had the inherent authority to entertain the plaintiffs' motions to dismiss the defendant's application for reinstatement on the ground that he was ineligible to apply. This is a question of law subject to plenary review. See AvalonBay Communities, Inc. v. Plan & Zoning Commission , 260 Conn. 232, 239-40, 796 A.2d 1164 (2002) ("[w]hether the trial court had the power to issue the order, as distinct from the question of whether the trial court properly exercised that power, is a question involving the scope of the trial court's inherent powers and, as such, is a question of law" subject to plenary review).
We conclude that the trial court properly determined that a motion to dismiss was the proper procedural vehicle to raise the claim that the defendant was ineligible to file his application for reinstatement to the bar. Although Practice Book (2012) § 2-53 (a) directs the trial court to refer any application for reinstatement after resignation to a standing committee, that rule also provides in relevant part that "[n]o application for reinstatement or readmission shall be considered by the court unless the applicant, inter alia, states under oath in the application that he or she has successfully fulfilled all conditions imposed on him or her as part of the applicant's discipline."[10] (Emphasis added.) Thus, the rule expressly recognizes that there are cases in which the court cannot entertain an application for reinstatement in the first instance because the applicant is ineligible to apply for reinstatement, regardless of his or her present fitness to practice law. In other words, this rule of practice expressly recognizes that eligibility to apply for reinstatement and fitness for reinstatement are separate and distinct issues, and the court , rather than the standing committee, must determine eligibility as a threshold issue.
As we have explained, under the common law of this state, an attorney who has knowingly and voluntarily waived his or her right to seek reinstatement to the bar after resignation is ineligible to apply for reinstatement. See part I of this opinion. Although this rule was not expressly codified in Practice Book (2012) § 2-53, we can perceive no reason why an attorney who is ineligible to apply for reinstatement because he has waived the right to do so should be subject to a different procedure than an attorney who is ineligible to apply for the reasons set forth in this rule of practice. Indeed, even if Practice Book (2012) § 2-53 (a) did not expressly contemplate that the eligibility of an attorney to apply for reinstatement to the bar is a threshold issue to be decided by the trial *1187 court, it would make little sense to require the court to forward an application for reinstatement by an attorney who was ineligible to apply to a standing committee for a full hearing on the merits. Such a proceeding would not benefit the attorney in any way, but would only cause delay and a waste of judicial resources.
In addition, it bears emphasizing that attorney disciplinary proceedings are sui generis, that it is the exclusive duty of the Judicial Branch to regulate attorneys, and that entities such as the committee and Disciplinary Counsel act as the agents of the court when carrying out their regulatory and disciplinary functions. See Burton v. Mottolese , 267 Conn. 1, 26, 835 A.2d 998 (2003) ("[T]he proceeding to disbar ... an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court.... Once the complaint is made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require.... [T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct." [Internal quotation marks omitted.] ), cert. denied, 541 U.S. 1073, 124 S.Ct. 2422, 158 L.Ed. 2d 983 (2004) ; see also Massameno v. Statewide Grievance Committee , 234 Conn. 539, 554, 663 A.2d 317 (1995) ("rules of practice authorize the [committee] to act as an arm of the court in fulfilling this responsibility [to protect the public from unfit practitioners]" [internal quotation marks omitted] ); Grievance Committee v. Goldfarb , 9 Conn. App. 464, 473, 519 A.2d 624("the Superior Court has explicitly granted grievance [panels] the power to inquire into and investigate attorney misconduct"), cert. denied, 203 Conn. 802, 522 A.2d 292 (1987) ; Grievance Committee v. Goldfarb , supra, at 477, 519 A.2d 624 ("Grievance [panels] obviously perform a necessary and valuable function by providing the courts with able and competent experts to investigate and evaluate claims of attorney misconduct. This delegation of power, however, is not a deprivation of power. The Superior Court retains inherent and plenary power to regulate and discipline its officers."). Thus, this case differs from the situation in which a court, by legislative grant, reviews a decision of an agency in a separate branch of government, where the court is required to consider the independent rights, obligations and interests of the parties affected by the decision and of the administrative decision maker. When dealing with matters of attorney discipline, the court must consider the rights and interests of only one party, the attorney who is the subject of the proceedings, without ignoring the court's interest in protecting its own integrity. The defendant has cited no authority for the proposition that an attorney has an inherent right to have the threshold issue of eligibility determined by a standing committee, rather than by the court, or that the standing committee has an inherent right or obligation to determine the issue, which the courts must respect.[11] We *1188 conclude, therefore, that the trial court, rather than the standing committee, has the authority to entertain a colorable claim that an attorney is ineligible to apply for reinstatement to the bar because of a prior waiver of the right to do so.
Although Practice Book (2012) § 2-53 (a) does not specify the procedural vehicle for raising a claim that an attorney is ineligible to apply for reinstatement, it is well established that the trial court has the inherent power to craft procedures by which it may entertain threshold issues in order to avoid unnecessary delays and to conserve judicial resources. See Miller v. Appellate Court , 320 Conn. 759, 771, 136 A.3d 1198 (2016) (courts have inherent power "to manage [their] dockets and cases ... to prevent undue delays in the disposition of pending cases" [internal quotation marks omitted] ). This power "is of ancient origin, having its roots in judgments ... entered at common law ... and dismissals .... That power may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases." (Emphasis added; internal quotation marks omitted.) Id. at 771-72, 136 A.3d 1198 ; see also Grievance Committee v. Goldfarb , supra, 9 Conn.App. at 471, 519 A.2d 624 ("the trial court has broad powers over both procedural and substantive aspects of attorney disciplinary proceedings"). Because Practice Book (2012) § 2-53 (a) expressly contemplates that the trial court will determine as a threshold issue whether an attorney is eligible to apply for reinstatement to the bar after resigning, and because the trial court has the inherent power to craft procedures by which to dispose of such threshold issues, we conclude that the trial court here properly determined that it could entertain the plaintiffs' motions to dismiss the defendant's application for reinstatement.
The defendant contends, however, that a motion to dismiss is not the proper procedural vehicle for raising a claim that he was ineligible to apply for reinstatement because such a claim does not implicate the trial court's subject matter jurisdiction.
*1189 We disagree with the defendant because, although motions to dismiss are used to raise subject matter jurisdictional claims, that is not their exclusive purpose. Indeed, "[i]f a court, for docket management purposes , chooses to confer absolute finality to the issue of whether a party has lost the right to have [a] motion considered," dismissal is a proper procedure for doing so. (Emphasis added.) Ill v. Manzo-Ill , 166 Conn. App. 809, 821, 142 A.3d 1176 (2016) ; see id. at 825, 142 A.3d 1176 (trial court had inherent authority to grant motion to dismiss motion for modification of alimony award on ground that movant had not diligently prosecuted motion); see also Miller v. Appellate Court , supra, 320 Conn. at 771, 136 A.3d 1198 (inherent power of courts to manage dockets and prevent unnecessary delays includes power to render judgment of dismissal). We can perceive no reason why the trial court should lack this power under the circumstances of the present case. Accordingly, we need not resolve the thornier question of whether a claim that an attorney has waived his right to apply for reinstatement implicates the trial court's subject matter jurisdiction.
The defendant also contends that In re Application of Eberhart , supra, 48 Conn. Supp. at 267, 841 A.2d 749, and In re Application of Kliger , supra, 20 Conn. L. Rptr. 435, do not support the conclusion that a motion to dismiss is the proper procedural vehicle to raise a claim that an attorney is ineligible to apply for reinstatement on the ground that the attorney previously waived the right to do so because, in both of those cases, the trial court referred the application to a standing committee, and the initial determination of ineligibility was made by that body. See In re Application of Eberhart , supra, at 269-70, 841 A.2d 749 (applications for reinstatement to bar following resignation and waiver of right to reapply referred to standing committees, both of which recommended that attorney applicant not be reinstated); In re Application of Kliger , supra, at 435 (matter was first referred to standing committee). We do not rely on these cases, however, for the proposition that the trial court has inherent authority to grant a motion to dismiss an application for reinstatement by an attorney who has waived his right to submit such an application, which is a question of procedure. Rather, we rely on these cases for the proposition that an attorney who has knowingly and voluntarily waived his right to apply for reinstatement is ineligible to submit an application for reinstatement. See part I of this opinion. Although the trial courts in In re Application of Eberhart and In re Application of Kliger referred those respective applications to standing committees, nothing in those cases suggests that the trial court here was required to follow that procedure. Indeed, the procedural issue simply was not raised in those cases.
Finally, the defendant contends that Practice Book § 1-8, which provides in relevant part that the rules of practice "will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice," required the trial court to forward his application for reinstatement to a standing committee because "[i]t would be an injustice" to deny him a hearing on the question of "whether the circumstances of his resignation and equity justify his readmission." The defendant contends that, contrary to the trial court's apparent belief, it was not "inevitable" that the outcome of such a hearing would be a recommendation that he was ineligible to apply for reinstatement because the standing committee could have found that the "immense pressure" created by his family circumstances at the time that he resigned *1190 justified allowing him to apply for reinstatement. He further contends that "the trial court had no discretion or fact-finding power on an application for readmission ...."
Again, we disagree. As we have indicated, the trial court accepted the truth of the affidavits submitted by the defendant concerning his family circumstances and concluded that, as a matter of law , those circumstances did not invalidate his waiver of his right to apply for reinstatement. The defendant does not claim that this conclusion was wrong on the basis of the evidence that was before the court; nor has he pointed to any additional evidence that he would have submitted if his application had been forwarded to a standing committee. The defendant also does not claim-for good reason-that, even if his waiver was knowing and voluntary, he is nevertheless eligible to apply for reinstatement because he is currently fit to practice law. Accordingly, we cannot perceive what would be gained by requiring a standing committee to make the threshold determination as to whether the defendant is eligible to apply for reinstatement, a legal determination that would, in any event, ultimately be subject to review by the trial court. See Statewide Grievance Committee v. Ganim , 311 Conn. 430, 452, 87 A.3d 1078 (2014) ("[t]he ultimate facts [found by a standing committee] are reviewable by the court to determine whether they are reasonable and proper in view of the subordinate facts found and the applicable principles of law" [internal quotation marks omitted] ).
We further note that our conclusion that the trial court has the inherent power to entertain a motion to dismiss an application for reinstatement to the bar on the ground that the applicant is ineligible to apply necessarily implies that the court also has the inherent power to find facts necessary to decide the motion to dismiss. Cf. Conboy v. State , 292 Conn. 642, 652, 974 A.2d 669 (2009) ("where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts"). Thus, in a case-unlike the present one-in which the facts and circumstances surrounding an attorney's waiver of his right to apply for reinstatement to the bar could support a finding that the waiver was invalid for some reason, the trial court would have the authority to conduct an evidentiary hearing to explore that issue. We need not determine in the context of this appeal whether such a proceeding would be more akin to a proceeding on a motion to open a judgment pursuant to General Statutes § 52-212a, which must be brought within four months of the judgment and at which "the court must inquire into whether the decree itself was obtained by fraud, duress, accident or mistake"; Jenks v. Jenks , 232 Conn. 750, 753, 657 A.2d 1107 (1995) ; a proceeding on a claim that a defendant's waiver of his right to a jury trial was invalid, at which the defendant must prove that the waiver of a jury trial was not knowing and voluntary; see, e.g., State v. Ouellette , 271 Conn. 740, 753, 859 A.2d 907 (2004) ; or, instead, an entirely different proceeding given the sui generis nature of proceedings on an application for reinstatement to the bar. See Miller v. Appellate Court , supra, 320 Conn. at 771-72, 136 A.3d 1198.
For the foregoing reasons, we conclude that the trial court correctly determined that it had the inherent authority to entertain the plaintiffs' motions to dismiss. We further conclude that the trial court properly granted the motions to dismiss on the ground that the defendant's knowing and voluntary waiver of his right to apply for reinstatement to the bar rendered him *1191 permanently ineligible to submit such an application.
The judgment is affirmed.
In this opinion the other justices concurred.

The defendant commenced this action by way of a pleading titled, "Resignation of Attorney," and captioned, "Disciplinary Counsel v. Thomas J. Hickey ," even though Disciplinary Counsel had not previously filed a presentment in the Superior Court. See Practice Book § 2-34A (b) (7). A copy of the defendant's resignation was sent to the committee, which filed an appearance and was required to submit a report to the trial court. See Practice Book (2008) § 2-52 (b). For purposes of this opinion, we refer to Disciplinary Counsel and the committee individually by name and collectively as the plaintiffs, and, for consistency, we use the case caption employed by the defendant and the trial court.

IOLTA stands for "interest on lawyers' trust accounts." Black's Law Dictionary (10th Ed. 2014) pp. 936, 956. Rule 1.15 (a) (5) of the Rules of Professional Conduct provides in relevant part: " 'IOLTA account' means an interest- or dividend-bearing account established by a lawyer or law firm for clients' funds at an eligible institution from which funds may be withdrawn upon request by the depositor without delay...."

Hereinafter, all references to the trial court are to Judge Povodator.

Practice Book § 2-53 was amended to include this provision on June 14, 2013, to take effect on January 1, 2014.

The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Practice Book (2012) § 2-53 (a) provides in relevant part: "No application for reinstatement or readmission shall be considered by the court unless the applicant, inter alia, states under oath in the application that he or she has successfully fulfilled all conditions imposed on him or her as part of the applicant's discipline.... The application shall be referred, by the court to which it is brought, to the standing committee on recommendations for admission to the bar that has jurisdiction over the judicial district court location in which the applicant was suspended or disbarred or resigned ...."

We have reframed the claims set forth in the defendant's statement of the issues to more accurately reflect the arguments that he makes in his brief. See, e.g., Arras v. Regional School District No. 14 , 319 Conn. 245, 254 n.15, 125 A.3d 172 (2015).

As we have indicated, the defendant's application for reinstatement states in conclusory fashion that his "waiver does not preclude a present determination of his present fitness to be admitted to practice law." He provided no authority or explanation for that assertion.

The defendant also contends that, under the 2012 revision of Practice Book § 2-53, the trial court must treat a valid waiver as a defense to an application for reinstatement, instead of treating the lack of a waiver as a precondition for reinstatement. This claim is procedural , however, and has no bearing on the question of whether the provision of the current revision of Practice Book § 2-53 (b), making an attorney who has waived the right to apply for reinstatement ineligible to apply for reinstatement-which the defendant himself contends is substantive -is retroactive. For reasons set forth more fully in this opinion, we reject the defendant's procedural claim.

We note that the current version of Practice Book § 2-53 (f) provides in relevant part that "[t]he application shall be referred by the clerk of the superior court where it is filed to the chief justice or designee, who shall refer the matter to a standing committee on recommendations for admission to the bar ...." Also, Practice Book § 2-53 (d) currently provides in relevant part that, "[u]nless otherwise ordered by the court, an application for reinstatement shall not be filed until" the applicant has met certain enumerated conditions. We assume for purposes of this opinion that the 2012 revision of § 2-53 applies to the defendant's application for reinstatement. Even if the current revision applied retroactively, however, so long as the trial court correctly determined that a motion to dismiss was the proper procedural vehicle for raising a claim that an attorney is ineligible to apply for reinstatement because that attorney previously had waived his right to apply-which we conclude that it was-the same analysis would apply under the current revision of the rule.

We recognize, of course, that, when a court has delegated a fact-finding function to a separate regulatory entity, the court is required to defer to the factual findings of that entity. See Practice Book § 2-38 (f) ("[u]pon appeal, the court shall not substitute its judgment for that of the [S]tatewide [G]rievance [C]ommittee or reviewing committee as to the weight of the evidence on questions of fact"); Statewide Grievance Committee v. Ganim , 311 Conn. 430, 452, 87 A.3d 1078 (2014) ("[t]he standing committee, as fact finder, determines with finality the credibility of witnesses and the weight to be accorded their testimony" [internal quotation marks omitted] ); Doe v. Connecticut Bar Examining Committee , 263 Conn. 39, 58, 818 A.2d 14 (2003) ("[T]he Superior Court's role in reviewing a petition for admission is not that of [fact finder]. We have repeatedly stated that [t]he trier of the facts [i.e., the Bar Examining Committee] determines with finality the credibility of witnesses and the weight to be accorded their testimony." [Internal quotation marks omitted.] ); Scott v. State Bar Examining Committee , 220 Conn. 812, 825, 601 A.2d 1021 (1992) ("It was improper for the trial court ... to substitute its own assessment of the petitioner's credibility and candor for that of the [Bar Examining Committee]. Unlike the members of the executive committee, the trial court did not have the benefit of viewing the petitioner's demeanor when he testified at the hearing before the [Bar Examining Committee]."); cf. Statewide Grievance Committee v. Ganim , supra, at 452, 87 A.3d 1078 (standing committee's ultimate finding of current fitness to practice law is "reviewable by the court to determine whether [it is] reasonable and proper in view of the subordinate facts found and the applicable principles of law" [internal quotation marks omitted] ). This deference is required, however, not because such regulatory bodies have any inherent rights or obligations as independent decision makers to which the judiciary is required to defer. Rather, as this court explained in Scott , deference is required under these circumstances because, when such bodies have engaged in their fact-finding function, they are in a better position than the trial court to assess the credibility of witnesses. See Scott v. State Bar Examining Committee , supra, at 821-22, 25, 601 A.2d 1021.