******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DISCIPLINARY COUNSEL *v.*
FRANK CANNATELLI
(AC 44091)

Moll, Alexander and Suarez, Js.

*Syllabus*

The petitioner, the Disciplinary Counsel, filed a presentment alleging miscon-
duct by the respondent attorney, after a reviewing committee of the
Statewide Grievance Committee found that the respondent had violated
various provisions of the Rules of Professional Conduct and the rules
of practice. The disciplinary proceeding remained inactive while the
respondent pursued his appeal to the Superior Court from the decision
of the grievance committee directing the petitioner to file a presentment.
After the appeal process was completed, the court scheduled a hearing
on the presentment. The trial court rendered judgment for the petitioner,
and suspended the respondent from the practice of law for one year.
The respondent thereafter filed a postjudgment motion to dismiss for
lack of subject matter jurisdiction, arguing for the first time that, pursu-
ant to the applicable rule of practice (§ 2-47 (a)), the court lacked
jurisdiction because a hearing on the merits of the presentment was
not held within sixty days of its filing with the court. The court denied
the respondent's motion, and this appeal followed. *Held*:
1. The respondent could not prevail on his claim that the trial court erred
   in denying his postjudgment motion to dismiss for lack of subject matter
   jurisdiction; contrary to the respondent's claim, our Supreme Court has
   held that the sixty day hearing requirement of Practice Book § 2-47 (a)
   is directory, not mandatory, and that failure to meet its time requirements
   does not deprive the court of jurisdiction, and this court was bound by
   the decision of our Supreme Court.
2. The trial court did not abuse its discretion in suspending the respondent
   from the practice of law for one year; when stripped of repeated asser-
   tions that the court lacked subject matter jurisdiction, the respondent's
   contentions offered little by way of meaningful analysis, and, therefore,
   were unavailing.

Submitted on briefs February 4—officially released March 16, 2021

*Procedural History*

Presentment by the petitioner for alleged profes-
sional misconduct of the respondent, brought to the
Superior Court in the judicial district of New Haven
and tried to the court, *Abrams, J.*; judgment suspending
the respondent from the practice of law for one year,
from which the respondent appealed. *Affirmed.*

*Frank P. Cannatelli*, self-represented, the appellant
(respondent).

*Brian P. Staines*, chief disciplinary counsel, for the
appellee (petitioner).

*Opinion*

PER CURIAM. In connection with the presentment filed by the petitioner, the Disciplinary Counsel, alleging misconduct by the respondent attorney, Frank Cannatelli, the respondent appeals from the judgment of the Superior Court suspending him from the practice of law for one year for numerous violations of the Rules of Professional Conduct and the rules of practice. We affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to our resolution of this appeal. On or about November 20, 2015, following an evidentiary hearing, a reviewing committee of the Statewide Grievance Committee (grievance committee) issued a comprehensive decision finding that the respondent had violated various provisions of the Rules of Professional Conduct and the rules of practice. By way of summary only, we recite the following facts, which the reviewing committee found by clear and convincing evidence. Following an initial investigation by the grievance committee into a November, 2013 overdraft from the respondent's IOLTA[1] account, "[a] subsequent investigation of the respondent's IOLTA account revealed that the respondent had made numerous payments directly from his IOLTA account for personal and business expenses. These included payments to Comcast, TransAmerica, the [United States] Treasury, and the Mohegan Sun Casino. The respondent did not maintain proper records of his IOLTA accounts, including failure to maintain accurate ledgers.

"As of December 30, 2013, the balance in the respondent's IOLTA account was $195.24; however, the respondent had deposited $10,591.35 into the account on behalf of a client, Ziemba, during the period of October 21, 2013, to December 3, 2013, and had disbursed $8544.63 on behalf of the client for the same period, leaving [approximately $1850] unaccounted for.

"The respondent received a check in the amount of $5487.77 as an asset of the estate of Mark Ziemba, as set forth in the respondent's June 22, 2014 letter to the Wallingford Probate Court, but no inventory was filed with the Probate Court as of September 1, 2014, and the funds were held by the respondent until April of 2015." The reviewing committee further found that the respondent had not promptly returned a retainer in a matter that did not go forward.

Against the backdrop of these facts, the reviewing committee found the following violations by clear and convincing evidence, stating: "It is eminently clear from the record, and the respondent acknowledges, that he was commingling funds in his IOLTA account, paying personal bills and expenses directly from the account, and not maintaining complete records for the account, in violation of [r]ule 1.15 (b) of the Rules of Professional

Conduct. Keeping his own funds in the account, beyond the amount necessary to avoid service charges, further constitutes a violation of [r]ule 1.15 (c) of [the] Rule[s] of Professional Conduct and Practice Book § 2-27 (a). In paying a retainer over a period of time, rather than promptly, the respondent was in violation of [r]ule 1.15 (e) of the Rules of Professional Conduct.

"The respondent's failure to maintain required account records, including accurate general and client ledgers, accurate receipt and disbursement journals, copies of disbursements, and copies of billing statements, was in violation of [r]ule 1.15 (i) of the Rules of Professional Conduct and Practice Book § 2-27 (b). The respondent's handling of the Ziemba matters, where [approximately $1850] was not accounted for as of December 30, 2013, and where $5487.77 was held by the respondent until April of 2015, constitute violations of [r]ules 1.3, 1.15 (b) and (e), and 8.4 (3) of the Rules of Professional Conduct.

"The record in this matter reflects that the respondent's mishandling of his IOLTA account has been egregious. There was clear commingling, and the reviewing committee notes that the respondent previously agreed not to use his IOLTA account to pay personal or business related expenses, in a 2008 grievance complaint (*Bowler* v. *Cannatelli*, Grievance Complaint #08-0185)." On the basis of the foregoing, the reviewing committee directed the petitioner, pursuant to Practice Book § 2-35 (i), to file a presentment against the respondent. On February 1, 2016, the respondent appealed from the order of presentment to the Superior Court. *Cannatelli* v. *Statewide Grievance Committee*, Superior Court, judicial district of Hartford, Docket No. CV-16-6065656-S.

Meanwhile, on February 3, 2016, the petitioner filed a one count presentment against the respondent, alleging numerous incidents of attorney misconduct (disciplinary proceeding). Specifically, the petitioner alleged that the respondent violated rules 1.15 (b), 1.15 (c), 1.15 (e), 1.15 (i), 1.3, and 8.4 (3) of the Rules of Professional Conduct, as well as Practice Book § 2-27 (a) and (b), by commingling personal funds in his IOLTA account, paying personal bills and expenses directly from his IOLTA account, failing to maintain complete and accurate IOLTA account records, keeping personal funds in his IOLTA account above the amount necessary to avoid service charges, paying back an unused retainer fee to a client over time and not promptly, and failing to properly handle funds in the Ziemba matter with a specified amount unaccounted for and a separate amount held too long in the account.

In June, 2016, the Superior Court dismissed the respondent's appeal from the grievance committee's decision for lack of an appealable final judgment and subsequently denied his motion to reargue the judgment

of dismissal. See *Cannatelli* v. *Statewide Grievance Committee*, 186 Conn. App. 135, 137–38, 198 A.3d 716 (2018), cert. denied, 331 Conn. 903, 202 A.3d 374 (2019). The respondent appealed therefrom to this court, which affirmed the judgment of the Superior Court. Id., 136. Thereafter, our Supreme Court denied the respondent's petition for certification to appeal on February 27, 2019, denied the respondent's motion for reconsideration on April 3, 2019, and denied the respondent's motion for reconsideration en banc on May 22, 2019.

On September 25, 2019, the petitioner notified the Superior Court in the disciplinary proceeding, which had remained inactive while the respondent pursued his appeal from the order of presentment, that the presentment was ready to be scheduled for a hearing. On October 8, 2019, the court scheduled a hearing for December 9, 2019.

On November 22, 2019, pursuant to Practice Book § 2-82 (a) and (b), the parties executed a stipulation and submitted it to the court for approval on November 25, 2019 (stipulation). The stipulation recites the following facts. The respondent was admitted to the Connecticut bar in December, 1988, and has a history of attorney discipline, including a reprimand in February, 1998, a reprimand in March, 1998, a sanction with conditions in August, 2008, a reprimand in March, 2009, and a reprimand with conditions in July, 2012. As of the date of the stipulation, the respondent was in good standing. By grievance complaint dated July 29, 2014, Michael P. Bowler, statewide bar counsel, instituted a grievance complaint against the respondent. In connection therewith, the respondent tendered an affidavit pursuant to Practice Book § 2-82 (d), which was attached to the stipulation, in which he acknowledged that there was sufficient evidence to prove by clear and convincing evidence the material facts constituting a violation of the Rules of Professional Conduct and the rules of practice, as set forth in the November 20, 2015 decision of the reviewing committee, which also was attached to the stipulation and incorporated therein. Relatedly, the stipulation contained the following provision: "The parties stipulate that the court, when entering judgment on this presentment, may find by clear and convincing evidence the facts as set forth in the reviewing committee's decision of November 20, 2015, as well as the violations of the Rules of Professional Conduct and the Practice Book." The stipulation further stated that, pursuant to Practice Book § 2-82 (c), the parties were unable to agree to a proposed disposition but agreed, while retaining the right to appear at a hearing regarding a disposition and to present argument, that the matter should be submitted to the court "for the imposition of whatever discipline the court deems appropriate."

On December 9, 2019, the court conducted a hearing on the presentment, during which the parties presented

argument and the court admitted into evidence several documents offered by the respondent.[2] On January 28, 2020, the court issued a memorandum of decision rendering judgment in favor of the petitioner, finding by clear and convincing evidence that the respondent had violated the Rules of Professional Conduct and the rules of practice as set forth in the presentment, and suspending the respondent from the practice of law for a period of one year. The court explained that, in reaching its decision, it took "into account the respondent's significant history of discipline and the fact that the issues raised in this grievance proceeding, particularly the respondent's use of his IOLTA account to pay personal expenses, involved behavior for which the respondent had been previously sanctioned . . . ."

On January 31, 2020, the respondent filed with the Superior Court a postjudgment motion to dismiss for lack of subject matter jurisdiction, arguing for the first time that, pursuant to Practice Book § 2-47 (a), the court lacked subject matter jurisdiction because a hearing on the merits of the presentment was not held within sixty days of the filing thereof with the court. On April 21, 2020, the court denied the motion.[3] This appeal followed.

On appeal, the respondent does not challenge any of the underlying facts or findings of violations. Rather, the respondent claims that the court (1) erred in denying his postjudgment motion to dismiss for lack of subject matter jurisdiction and (2) abused its discretion in suspending him from the practice of law for one year. The respondent's claims are without merit and require only brief discussion.

First, the crux of the respondent's primary claim is that the court lacked subject matter jurisdiction at the time it rendered judgment. In support of his claim, the respondent relies on Practice Book § 2-47 (a), which provides in relevant part: "Presentment of attorneys for misconduct, whether or not the misconduct occurred in the actual presence of the court, shall be made by written complaint of the disciplinary counsel. Service of the complaint shall be made as in civil actions. Any interim proceedings to the contrary notwithstanding, *a hearing on the merits of the complaint shall be held within sixty days of the date the complaint was filed with the court. . . .*" (Emphasis added.) According to the respondent, (1) the sixty day hearing requirement in § 2-47 (a) is mandatory, and (2) the fact that the hearing on the merits of the complaint in this disciplinary proceeding took place well beyond the sixty day period deprived the Superior Court of subject matter jurisdiction. In *Statewide Grievance Committee* v. *Rozbicki*, 219 Conn. 473, 595 A.2d 819 (1991), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992), our Supreme Court held that the identical language of Practice Book (1978–97) § 31 (a), the predecessor to

§ 2-47 (a), is "directory, and not mandatory, and that failure to meet its time requirements does not deprive the court of jurisdiction."[4] Id., 481. "It is axiomatic that, as an intermediate court, we are bound by the decisions of our Supreme Court. [I]t is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent." (Internal quotation marks omitted.) *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 633, 161 A.3d 562 (2017). Thus, the respondent's first claim fails.[5]

Second, the respondent claims that the court abused its discretion in suspending him from the practice of law for a period of one year. We disagree.

"A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession. . . . Inherent in this process is a large degree of judicial discretion. . . . A court is free to determine in each case, as may seem best in light of the entire record before it, whether a sanction is appropriate and, if so, what that sanction should be. . . . [A]lthough our review of grievance proceedings is restricted, we recognize the seriousness of the interests that we must safeguard. We have a continuing duty to make it entirely clear that the standards of conduct, nonprofessional as well as professional, of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . ." (Citation omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Dixon*, 62 Conn. App. 507, 515–16, 772 A.2d 160 (2001).

When stripped of repeated, rehashed assertions that the court lacked subject matter jurisdiction, the respondent's contentions in support of his second claim reflect a "kitchen sink" approach, offering little by way of any meaningful analysis. Having considered the respondent's contentions, such as they are, we conclude that they are unavailing. In short, on the basis of our review of the record and the briefs, we conclude that the court did not abuse its discretion in suspending the respondent from the practice of law for one year.

The judgment is affirmed.

[1] "IOLTA stands for 'interest on lawyers' trust accounts.' " *Disciplinary Counsel* v. *Hickey*, 328 Conn. 688, 692 n.2, 182 A.3d 1180 (2018).

[2] The petitioner recommended, inter alia, that the court impose a one year suspension.

[3] The court stated in relevant part: "As a threshold matter, the court must consider whether it should even consider the respondent's postjudgment motion, even though it raises the issue of subject matter jurisdiction. '[O]nce a judgment [is] rendered it is to be considered final and it should be left undisturbed by [posttrial] motions except for a good and compelling reason. . . . Otherwise, there might never be an end to litigation.' [Citation omitted; internal quotation marks omitted.] *Chapman Lumber, Inc.* v. *Tager*, 288

Conn. 69, 107, [952 A.2d 1] (2008). '[T]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly where the parties have had a full opportunity to originally contest the jurisdiction of the adjudicatory tribunal. . . . Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such opportunity, whether there are strong policy reasons for giving him a second opportunity to do so.' (Citations omitted; [internal quotation marks omitted].) *Vogel* v. *Vogel*, 178 Conn. 358, 362–63, [422 A.2d 271] (1979).

"Section 12 of the Restatement (Second) of Judgments provides: 'When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if: (1) [t]he subject matter of the litigation was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or (2) [a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or (3) [t]he judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.' [1 Restatement (Second), Judgments § 12, p. 115 (1982)].

" 'Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings [appeal] to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . [A]t least where the lack of [subject matter] jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so.' [Citation omitted; internal quotation marks omitted.] *In re Shamika F.*, 256 Conn. [383, 407–408, 773 A.2d 347] (2001).

"In this case, it is not obvious in any respect that this court lacked subject matter jurisdiction when it entered judgment beyond the sixty day period contained in Practice Book § 2-47 (a). First, authority exists for the proposition that time limits imposed on disciplinary matters are directive rather than mandatory and that failure to adhere to those deadlines does not deprive the court of subject matter jurisdiction. *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 681, [694 A.2d 1218] (1997). In addition, a review of the file reveals that respondent's actions were the major cause of the fact that this matter was not concluded expeditiously. As a matter of public policy, allowing respondents to 'run out the clock' in disciplinary matters would run counter to the administration of an effective attorney disciplinary process. Finally, the respondent did not raise the issue of subject matter jurisdiction when the hearing was held in this matter. In fact, the [respondent] did not dispute liability, but, rather, simply argued for a less severe sanction than that sought by the [petitioner]."

[4] The respondent's only response to the *Rozbicki* decision is to state that "[i]t was talking about [Practice Book §] 31 (a) and not [§] 2-47 (a)," wholly ignoring the fact that the court in *Rozbicki* was addressing the same rule prior to the renumbering of the rules of practice in 1998.

[5] We find no error in the court's treatment of the respondent's postjudgment motion, as set forth in footnote 3 of this opinion, which is only buttressed by our conclusion herein.